In the Matter of the CARE AND TREATMENT OF Clifford SCATES, a/k/a Clifford M. Scates, Respondent–Appellant,

v.

STATE of Missouri, Petitioner–Respondent.

No. 25545.

Missouri Court of Appeals, Southern District, Division Two.

May 6, 2004.

Emmett D. Queener, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and David F. Barrett, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

On July 12, 1994, Clifford M. Scates ("Appellant") pled guilty to two counts of sexual assault in the first degree. In exchange for his guilty plea, the State recommended a maximum sentence of seven years imprisonment in the Missouri Department of Corrections.[1] Appellant was

---

1. The precise terms of the plea agreement, and the question of whether the State violated these terms by petitioning for Appellant's commitment as a Sexually Violent Predator

scheduled to be released from prison on October 17, 2000; however, on September 29, 2000, the State filed a petition to have Appellant civilly committed as a sexually violent predator ("SVP"), pursuant to Missouri's Sexual Violent Predator Act ("SVP Act"), section 632.480 *et seq.*[2] The allegations of the State's petition were tried before a jury and, at the conclusion of the trial, the jury found Appellant to be an SVP beyond a reasonable doubt. Following the jury verdict, Appellant was delivered into the custody of the Missouri Department of Mental Health for confinement and treatment at the Sexual Predator Unit in Farmington, Missouri. Appellant then timely filed this appeal, in which he alleges trial court error in four respects. We affirm.

▉ In his first point on appeal, Appellant alleges that the trial court erred in denying his request for a pre-trial hearing "to determine the admissibility of risk prediction based on the results of actuarial instruments," such as the Static–99 and the MnSOST–R. He asserts that, under section 490.065,[3] a pre-trial hearing was proper because "the State must establish that actuarial instruments are reasonably relied upon by experts in the field in forming opinions, and that the actuarial instruments are reasonably reliable to predict

risk of sexual re-offense before an opinion based on them in admissible at trial."

▉ Without considering the relative merits of Appellant's argument, we note that, at trial, Appellant failed to object[4] to the State's expert testimony based on the actuarial instruments, so that his argument was not preserved for appeal. *See Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860 (Mo. banc 1993). As we noted, however, in *Gage v. Morse*, 933 S.W.2d 410 (Mo.App. S.D.1996), there are "ample reasons" why objections to pre-trial rulings preserve nothing for our review. *Id.* at 417. Thus, "[w]hile a motion in limine has the salutary purpose of pointing out to the court and to opposing counsel anticipated evidence which may be objectionable, ... a pre-trial ruling thereon ... presents nothing for appellate review unless preserved by timely objection or offer of proof. Failure to make such a timely objection constitutes consent to the admission of the evidence." *Id.* at 418 (quoting *Robbins v. Jewish Hosp. of St. Louis*, 663 S.W.2d 341, 348 (Mo.App. E.D. 1983)).

Thus, because Appellant failed to timely object to the State's expert testimony *at trial*, his assertion of error was not preserved for appeal. Point I is denied.

("SVP"), are the substance of Appellant's second point on appeal. While the State does not dispute Appellant's claim that, in exchange for his guilty plea, he was promised the State's recommendation of a maximum sentence of seven years, neither does it expressly endorse this assertion. Even though Appellant did not favor us with a copy of the plea agreement, because the State does not offer a contrary version of the terms of the agreement, we reference the terms as represented by Appellant in order to provide a factual backdrop.

**2.** All references to statutes are to RSMo 2000, unless otherwise indicated.

**3.** "Section 490.065.3 requires that the facts and data on which an expert relies must be reasonably relied on by experts in the relevant field." *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 149 (Mo. banc 2003).

**4.** Indeed, Appellant not only failed to object to the State's expert testimony, but he also presented his own expert who offered testimony based on the very same actuarial instruments that Appellant now finds objectionable.

■ In his second point on appeal, Appellant contends that the trial court erred in failing to grant his motion to dismiss as a means of enforcing the plea agreement he entered into with the State. According to Appellant, the terms of his plea agreement provided that, in exchange for pleading guilty to two counts of Sexual Assault in the First Degree, he was to be sentenced to a maximum sentence of seven years imprisonment. Thus, Appellant contends, by filing its petition to have him civilly committed as a SVP, the State attempted (and ultimately succeeded) in breaching its plea agreement with Appellant.

In this case, however, the plea agreement in question is not included in the record on appeal. While the plea agreement's absence from the record would ordinarily preclude us from determining whether a breach of the agreement occurred,[5] in this case we need not study the particular language of the agreement before concluding that Appellant's argument is without merit.

While Appellant entered his guilty pleas on July 12, 1994, the SVP Act was passed by the Missouri General Assembly in 1998, and did not go into effect until January 1, 1999. *See* § 632.495. Thus, at the time Appellant entered plea negotiations with the State, it was impossible for the prosecutor to make any promises concerning whether Appellant was still subject to the possibility of civil commitment as an SVP because the statute which permits such commitment was not in existence.

Additionally, as the Eastern District of this court has previously held, a defendant's civil commitment under Missouri's SVP Act is not a direct consequence of his guilty plea, rather it is collateral. *Morales v. State*, 104 S.W.3d 432, 435–36 (Mo.App.

E.D.2003) (holding that defendant could not mount a successful ineffective assistance claim based on counsel's failure to inform him of the collateral consequence of civil commitment). This distinction largely reflects the fact that the SVP Act is civil, not criminal, so that commitment as an SVP is separate and distinct from the underlying criminal case. *Id.* at 436.

Thus, because the SVP Act was not in existence at the time Appellant entered his guilty plea, and because commitment under the Act is a collateral consequence of pleading guilty, we find that, in seeking to have Appellant civilly committed, the State did not breach the plea agreement. Point II is therefore denied.

■ In his third point on appeal, Appellant argues that the trial court erred in submitting certain instructions to the jury over Appellant's objection. In particular, Appellant alleges error in the language of Instruction No. 8, which instructed the jury: "If you find [Appellant] to be a sexually violent predator, the [Appellant] shall be committed to the custody of the director of the department of mental health for control, care and treatment." When reviewing an alleged erroneous instruction, the trial court's ruling on the instruction is not to be reversed absent an abuse of discretion. *Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 476 (Mo. App. S.D.2001). Moreover, "[t]he giving of an alleged erroneous instruction is not grounds for reversal unless the appealing party was prejudiced thereby." *Id.* (citing *Lear v. Norfolk & Western Ry. Co.*, 815 S.W.2d 12, 15 (Mo.App. W.D.1991)).

Here, Appellant asserts that Instruction No. 8 was improper for two reasons. First, he argues that the sole responsibility of the jurors was to determine whether Appellant was an SVP, and not what would

5. *Miller v. Penmac Pers. Serv., Inc.*, 68 S.W.3d 574, 578 (Mo.App. S.D.2002).

happen to him if he was found to be an SVP. Second, Appellant argues that in informing the jury that the purpose of the SVP Act is "treatment," the trial court minimized the sense of responsibility that the jurors should have felt in determining whether he was an SVP.

Rule 70.02(b)[6] provides that if a Missouri Approved Instruction ("MAI") is applicable to a particular case, its use is mandatory. *Hosto v. Union Elec. Co.*, 51 S.W.3d 133, 142 (Mo.App. E.D.2001). With respect to SVP cases, however, there are no applicable MAI instructions. Under those circumstances, where there are no applicable MAI instructions "so that an instruction not in MAI must be given," Rule 70.02(b) requires that "such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Moreover, in adopting a non-MAI instruction, "the court must adopt an instruction that follows the substantive law and can be readily understood by the jury." *Hosto*, 51 S.W.3d at 142 (citing *Murphy v. City of Springfield*, 794 S.W.2d 275, 278 (Mo.App. S.D.1990)).

In turning to the SVP Act, we note that section 632.492 provides: "If the trial is held before a jury, the judge shall instruct the jury that if it finds that the person is a sexually violent predator, the person shall be committed to the custody of the director of the department of mental health for control, care and treatment." There can be no dispute that, in parroting the precise language of section 632.492, Instruction No. 8 "follow[ed] the substantive law," pursuant to both *Hosto* and *Murphy*. Moreover, we emphasize that, in providing Instruction No. 8 to the jury, the trial court complied with the SVP Act's mandate that "the judge *shall* instruct the jury" that, once adjudicated as an SVP, a

defendant is subject to civil commitment. § 632.492 (emphasis added).

Furthermore, in analyzing Appellant's argument that Instruction No. 8 was improper, we are also mindful that Appellant's proposed Instruction No. G, which was rejected by the trial court, contained language *virtually identical* to the language found in Instruction No. 8. Rejected Instruction No. G read:

> If you find [Appellant] to be a sexually violent predator, he shall be committed to the custody of the director of the department of mental health for control, care and treatment. There is no maximum period of such commitment. [Appellant] shall remain so committed until a later, separate jury unanimously determines that his mental abnormality has so changed that he is safe to be at large and will not engage in acts of sexual violence if released.

(emphasis added). The only difference in Instruction No. 8 and the rejected Instruction No. G is that the latter contained additional language. In fact, during the instruction conference before the court, Appellant admitted that the SVP Act requires that the jury be instructed with the information contained in Instruction No. 8., and stated that "Instruction 8 is okay as far as it goes." Appellant then went on to argue that Instruction No. G was appropriate because "the Court has discretion to give any further instructions it thinks are necessary for the jury to understand its obligations in the case." Considering that Appellant admitted that "Instruction 8 is okay as far as it goes," and offered an instruction that, while more detailed, contained the same information, it seems disingenuous for Appellant to now argue that Instruction No. 8 was erroneous and prejudicial. Point III is denied.

---

**6.** All rule references are to Supreme Court Rules (2003), unless otherwise stated.

 In his fourth and final point on appeal, Appellant contends that the trial court erred in denying his motion to dismiss, in which he argued that the SVP Act is unconstitutional because it denies SVPs equal protection of the law. In particular, Appellant argues that, inasmuch as section 632.495 of the Act fails to provide for less-restrictive alternatives to the "secure confinement" of SVPs, it denies him the right to equal protection.

In the recent case of *In re Care & Treatment of Norton,* 123 S.W.3d 170 (Mo. banc 2003), however, the Missouri Supreme Court addressed and soundly rejected the argument espoused by Appellant. After highlighting the SVP Act's "elaborate, step-by-step procedure" that "confer[s] on the suspected predator a number of rights enjoyed by defendants in criminal prosecutions," the *Norton* court found that the "statutory scheme is narrowly tailored to promote the compelling interest of protecting the public from this small percentage of offenders." *Id.* at 174–75. In characterizing the *Norton* opinion, we recently found that:

> *Norton* concludes that secure confinement of sexually violent predators, as provided in the SVP Act, is narrowly tailored to serve Missouri's compelling state interest of protecting the public from crime; that this interest justifies different treatment of persons adjudicated as sexually violent predators because there is a substantial probability that they will commit future crimes of sexual violence if not confined in a secure facility.

*In re Care & Treatment of Williams,* 128 S.W.3d 862, 863 (Mo.App. S.D., 2004). In view of *Norton*'s holding that the "secure confinement required by § 632.495 does not deny equal protection of law," *see Williams,* at 863, Appellant's point is without merit. Accordingly, Point IV is denied.

The judgment of the trial court is affirmed.

PARRISH, J., and BATES, J., concur.